UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KEVIN KNUDSEN | CIVIL ACTION |
| VERSUS | NO. 14-382 |
| BOARD OF SUPERVISORS OF THE UNIVERSITY OF LOUISIANA SYSTEM | MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR. |

## ORDER AND REASONS ON MOTION

Plaintiff, Kevin Knudsen, alleges that his employer, the Board of Supervisors of the University of Louisiana System ("the Board"), discriminated against him based on his race by allowing his subordinate to foster a racially hostile work environment and that the Board retaliated against him for having complained about the actions of his subordinate by transferring him to a less desirable position, all in violation of Title VII, 42 U.S.C. § 2000e(k), "and corresponding [but unspecified] state law." Complaint, Record Doc. No. 1 at p. 7. This matter was referred to a United States Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all parties. Record Doc. No. 10.

The Board filed a motion for summary judgment addressing plaintiff's claims under Title VII and alleging in a footnote that it enjoys Eleventh Amendment immunity from any state law claims. Record Doc. No. 22, at p.1 n.1. Knudsen filed a timely memorandum in opposition, in which he fails to respond to defendant's Eleventh Amendment immunity argument or to argue that any "corresponding state law" applies

to his claims. Record Doc. No. 25. A party's failure to brief an argument in response to a summary judgment motion waives that argument. Accordingly, Knudsen is deemed to have abandoned any contention either that he has state law claims or that defendant is not immune under the Eleventh Amendment from being sued in this court for such claims. McDaniel v. Shell Oil Co., 350 F. App'x 924, 927 (5th Cir. 2009); Blackwell v. Laque, 275 F. App'x 363, 366 n.3 (5th Cir. 2008); Ledet v. Fleetwood Enters., Inc., 245 F.3d 791, 2000 WL 1910173, at *3 (5th Cir. 2000).

The Board filed a timely reply memorandum in support of its summary judgment motion. Record Doc. No. 26. The memorandum contained two new exhibits, Defendant's Exhibits J and K, which the court did not consider because plaintiff had no opportunity to respond to those exhibits. Even if the court had considered the exhibits, they would not have changed the outcome of this decision.

Having considered the complaint, the record, the arguments of the parties and the applicable law, IT IS ORDERED that the motion is GRANTED IN PART as to plaintiff's retaliation claim and DENIED IN PART as to his hostile work environment claim, for the following reasons.

## ANALYSIS

### A.     Standards of Review

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56, as revised effective December 1, 2010, establishes new procedures for supporting factual positions:

> (1)  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2)  Objection That a Fact Is Not Supported by Admissible Evidence.  A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3)  Materials Not Cited.  The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4)  Affidavits or Declarations.  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Thus, the moving party bears the initial burden of identifying those materials in the record that it believes demonstrate the absence of a genuinely disputed material fact, but it is not required to negate elements of the nonmoving party's case. Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to [a particular material] fact." Advisory Committee Notes, at 261.

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). No genuine dispute of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must cite to particular evidence in the record to support the essential elements of its claim. Id. (citing Celotex, 477 U.S. at 321-23); accord U.S. ex rel. Patton v. Shaw Servs., L.L.C., 418 F. App'x 366, 371 (5th Cir. 2011). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Celotex, 477 U.S. at 323; accord U.S. ex rel. Patton, 418 F. App'x at 371.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005). "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" Nat'l Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original); accord Duron v. Albertson's LLC, 560 F.3d 288, 291 (5th Cir. 2009).

    B.    Material Fact Issues Are in Dispute Regarding Plaintiff's Hostile Work Environment Claim

"The creation of a hostile work environment through harassment . . . is a form of proscribed discrimination" under Title VII. Vance v. Ball State Univ., 133 S. Ct. 2434, 2455 (2013) (Thomas, J., concurring) (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998); Meritor Sav. Bank, F.S.B. v. Vinson, 477 U.S. 57, 64-65 (1986)). The Board argues that Knudsen cannot establish a prima facie case of a racially hostile work environment because he cannot prove either that the alleged harassment was based on his race or that it was severe or pervasive enough to affect a term, condition or privilege of his employment. I find that Knudsen's evidence is sufficient to create a genuine issue of material fact that requires trial of his hostile work environment claim.

This case does not fit the usual pattern of allegations by an employee that either his supervisor or a co-worker created a hostile work environment. The legal standards for those usual fact patterns are well established. To establish a prima facie case of hostile work environment under Title VII, a plaintiff must prove that

> (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on [a prohibited ground]; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

Mitchell v. Snow, 326 F. App'x 852, 856-57 (5th Cir. 2009) (quoting Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002)). For purposes of the pending motion for

summary judgment only, defendant does not contest that Knudsen could establish the first two prongs of the test.

"'[W]here the harassment is allegedly committed by a supervisor with immediate or successively higher authority, the plaintiff employee needs to satisfy only the first four of the elements listed above.'" Parker v. La. Dep't of Special Educ., 323 F. App'x 321, 325 (5th Cir. 2009) (quoting Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 353 (5th Cir. 2001)); accord Equal Emp'mt Opportunity Comm'n v. Boh Bros. Constr. Co., 731 F.3d 444, 452-53 (5th Cir. 2013) (en banc) (citing Vance, 133 S. Ct. at 2439). "If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable." Id. at 452. However, if no tangible employment action is taken, the employer will have the opportunity to prove its affirmative Ellerth/Faragher defense. Id. (citing Vance, 133 S. Ct. at 2439).

"An employee is a supervisor if 'he or she is empowered by the employer to take tangible employment actions against the victim.'" Id. (quoting Vance, 133 S. Ct. at 2439). If the employer has not "empowered that employee to take tangible employment actions against the victim, i.e., to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits,'" Vance, 133 S. Ct. at 2443, plaintiff must establish the fifth prong of a prima facie case. This means that a plaintiff who sues his employer for the hostile conduct of a co-worker must prove that

defendant was negligent in failing to prevent and remedy the alleged harassment. Id. at 2439, 2448; Boh Bros. Constr. Co., 731 F.3d at 452.

Knudsen, a Caucasian male with the rank of Sergeant in the Parking Division of the Southeastern Louisiana University (the "University") Police Department, was the supervisor of Angela Jones, an African-American police officer in the Parking Division. Knudsen accuses Jones, his subordinate, of race-based actions toward him that created a hostile work environment. He also complains that Dr. Marvin Yates, the Vice President for Student Affairs and an African-American, refused to respond to Knudsen's repeated complaints about Jones as they were passed up the chain of authority from Knudsen to his immediate supervisor, the Director of the University Police Department, and from there to Dr. Yates, who was the supervisor of the Police Department Director. The established four-prong test for supervisory liability applies to plaintiff's allegations that Dr. Yates abetted the hostile work environment allegedly created by Jones.

However, that test cannot apply to Jones's actions because she was not plaintiff's supervisor. The unusual fact pattern of a supervisor alleging that a subordinate created a hostile work environment does not appear in any Fifth Circuit case. The Board cites one decision from the United States District Court for the District of Columbia in which a supervisor sought to hold her employer liable for alleged sexual harassment by her subordinate employee. Lyles v. Dist. of Columbia, 17 F. Supp. 3d 59 (D.D.C. 2014), reconsideration denied, 2014 WL 421614 (D.D.C. Aug. 27, 2014). "No court has ever

8

held that, as a matter of law, an employer cannot be liable for a subordinate's harassment of his or her supervisor." Id. at 70 n.7 (citing Parada v. Great Plains Int'l of Sioux City, Inc., 483 F. Supp. 2d 777, 796 n.6 (N.D. Iowa 2007)).

This "unique factual twist" presented a matter of first impression that neither the United States Supreme Court nor the District of Columbia Circuit had addressed and that "very few courts have ever . . . faced." Id. at 70 & n.6 (citing Ann Carey Juliano, Harassing Women with Power: The Case of Including Contra-Power Harassment Within Title VII, 87 B.U.L. Rev. 491, 516-23 (2007) (finding only 24 federal cases or agency actions where the issue arose)). Therefore, the Lyles court applied a modified version of the fifth factor of the hostile work environment prima facie case, as follows.

> An employer may be held liable for the harassment of a supervisor by a subordinate if the employer knew or should have known of the harassment and failed to implement prompt and appropriate action; but an employer will not be liable for the sexual harassment of a supervisor by a subordinate where the supervisor-plaintiff had the ability to stop the harassmentFN8 and failed to do so. The Court finds this standard to be the most appropriate because it empowers the supervisor to remove or reprimand the subordinate-harasser, while ensuring that if the supervisor is unable to address the harassment and reports the subordinate-harasser to her supervisors, i.e., takes action to stop the harassment, and it is unsuccessful or the employer resists such actions, the employer will still be liable for allowing the hostile work environment to persist despite being on notice of the problem. Other courts confronting this issue have developed a similar standard, albeit less explicitly.
>> FN8. This could include reporting the harassment to the supervisor's own supervisor, but it could also include doing something to effect a "significant change in employment status," see Vance, 133 S. Ct. at 2443, of the harasser, such as firing, or reprimanding the employee.

Id. at 70-71 (citing Mingo v. Roadway Express, Inc., 135 F. Supp. 2d 884, 891, 898 (N.D. Ill. 2001); Cronin v. United Serv. Stations, Inc., 809 F. Supp. 922, 930-31 (M.D. Ala. 1992); Perkins v. Gen. Motors Corp., 709 F. Supp. 1487, 1497-98 (W.D. Mo. 1989); Lewis v. Sugar Creek Stores, Inc., No. 96-CV-0100E(H), 1996 WL 685730, at *2 (W.D.N.Y. Nov. 25, 1996); Hanlon v. Chambers, 195 W. Va. 99, 108-09, 464 S.E.2d 741 (1995)) (emphasis added).

There is evidence in the instant case that Knudsen lacked authority to discipline Jones, who was a classified Civil Service employee. He could only recommend to his immediate supervisor, the Director of the University Police Department, that disciplinary action be taken against Jones, and the Director himself could only recommend such action to his own supervisor, Dr. Yates, or the director of human resources. Viewed in the light most favorable to plaintiff, there is evidence that Knudsen repeatedly complained about Jones orally and in writing to his supervisors, the human resources department and the University's EEOC officer, and that upper level management did little to respond until Jones was finally terminated in April 2014. Thus, whether this court applies the Fifth Circuit's established co-worker to co-worker harassment standard, i.e., that the Board knew or should have known of Jones's harassment and failed to take prompt remedial action, or the subordinate-to-supervisor standard used by the Lyles court, i.e., that the supervisor-plaintiff had the ability to stop the harassment and failed

to do so, material fact issues are in dispute as to the fifth prong of Knudsen's hostile work environment prima facie case.

Material disputed fact issues also remain as to the third prong of Knudsen's prima facie case, whether Jones's conduct of which plaintiff complains was "based on race" and "had a racial character or purpose." Watkins v. Tex. Dep't of Crim. Justice, 269 F. App'x 457, 464 (5th Cir. 2008). Viewed in the light most favorable to plaintiff, there is evidence from which a reasonable factfinder could conclude that at least some of Jones's conduct towards Knudsen was racially based.

Material fact issues are also in dispute as to the fourth prong of Knudsen's prima facie case, whether the conduct of Jones and the alleged non-responsiveness of plaintiff's superiors to his complaints was so "severe or pervasive to alter the conditions of [Knudsen's] employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). To determine whether harassment meets this standard, the court considers a number of factors: "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating (or whether it is a mere offensive utterance), and whether it unreasonably interferes with the victim's work performance." Id. Material fact questions are in dispute as to each of these factors.

"Finally, the conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." Stewart v. Miss. Transp. Comm'n, 586 F.3d 321,

11

330 (5th Cir. 2009) (quotation omitted). There is ample subjective testimony of the havoc that Jones's conduct created in the University Police Department and its effect on Knudsen, and there is sufficient evidence to create a fact question whether her actions and the actions and/or inactions of Dr. Yates and other higher management officials fostered an objectively hostile or abusive work environment for plaintiff.

Summary judgment on Knudsen's hostile work environment discrimination claim is therefore denied.

   C. <u>No Material Facts Are in Dispute as to Plaintiff's Claim of Retaliation</u>

To meet his summary judgment burden to demonstrate a material fact issue regarding his retaliation claim, Knudsen must provide <u>evidence</u> to

> establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action. . . . If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation.
>  An employee establishes pretext by showing that the adverse action would not have occurred "but for" the employer's retaliatory reason for the action. In order to avoid summary judgment, the plaintiff must show a conflict in substantial evidence on the question of whether the employer would not have taken the action "but for" the protected activity.

<u>Coleman v. Jason Pharm.</u>, 540 F. App'x 302, 303-04 (5th Cir. 2013) (quotations omitted) (citing <u>Univ. of Tex. Sw. Med. Ctr. v. Nassar</u>, 133 S. Ct. 2517, 2533-34 (2013); <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973); <u>McCoy v. City of</u>

Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007); LeMaire v. Louisiana, 480 F.3d 383, 388-89 (5th Cir. 2007); Long v. Eastfield Coll., 88 F.3d 300, 308 (5th Cir. 1996)); accord Feist v. La. Dep't of Justice, 730 F.3d 450, 454 (5th Cir. 2013). "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." McCoy, 492 F.3d at 557 (citation omitted).

Solely for the purposes of the Board's pending summary judgment motion, it is undisputed that Knudsen was transferred from his position as the Sergeant in charge of the Parking Division to a vacant position as a supervisory patrol officer on the night shift after he had repeatedly complained to his superiors about Jones's conduct for many months. Although plaintiff's title, rank and salary were not affected by the transfer, he contends that the transfer was actually a demotion because it afforded him decreased supervisory responsibilities, fewer opportunities to earn overtime or special detail pay and less desirable hours. For purposes of the pending motion only, the Board does not argue that Knudsen cannot establish a prima facie case of retaliation, and the court therefore assumes without deciding that plaintiff can do so. See Wooten v. McDonald Transit Assocs., Inc., 775 F.3d 689, 696 (5th Cir. 2015) ("a variety of concrete actions (changes in hours, reduced responsibilities, demotion, preclusion from job-related certification) . . . together might amount to an adverse employment action"); Amanduron v. Am. Airlines, 416 F. App'x 421, 424 (5th Cir. 2011) (quotation omitted) (citing Casna v. City of Loves Park, 574 F.3d 420, 427 (7th Cir. 2009); Hagan v. Echostar Satellite,

13

L.L.C., 529 F.3d 617, 626 (5th Cir. 2008); Gee v. Principi, 289 F.3d 342, 345 (5th Cir. 2002)) ("[A]n informal complaint may constitute protected activity for purposes of retaliation claims.").

The Board has produced evidence of its legitimate, non-retaliatory reasons for its action. The uncontradicted, competent evidence shows that Dr. John Crain, the University's President and a Caucasian, decided to hire a consultant, Willie Bell of the Bell Consulting Group, to perform a comprehensive evaluation of the entire University Police Department, not just the Parking Division. Defendant's Exh. F, deposition of Dr. John Crain, at pp. 86-90. Bell, an African-American, was on campus to review the police department for five days in September 2013. Bell Consulting Group's report, Record Doc. No. 22-8, Defendant's Exh. G, at p. 1.

On October 28, 2013, the Bell Consulting Group issued its report, which included 37 recommendations for restructuring and improving the University police department as a whole. Part of the report recommended that parking be separated from law enforcement functions because parking is a civilian function that "should not be managed by a sworn law enforcement officer (Police Sergeant)," but "by a single parking professional." Id. at p. 7. Therefore, Bell recommended that the Board "[m]ove the Sergeant out of Parking Division management, . . ." and "return the position to sworn law enforcement responsibilities." Id. at p. 8, Recommendation #6. Knudsen was the sergeant in charge of the Parking Division.

The report is clear that the recommendation was made for legitimate non-retaliatory and non-discriminatory reasons, including: "Police officers [in the Parking Division and elsewhere] perform several non-law enforcement functions <u>that would more efficiently and cost-effectively</u> be provided by others, an important consideration <u>since the number of officers has been reduced.</u> . . . . [P]arking enforcement is <u>not a law enforcement function</u> and there should not be police officers performing parking enforcement. . . . [The University] is a large campus and it is growing larger, (sic) the Parking manager needs to be an experienced parking professional who knows how to configure and reconfigure parking operations to adjust to the increasing complexities that accompany growth." <u>Id.</u> at pp. 1, 7, 9.

Knudsen filed an EEOC charge alleging hostile work environment race discrimination and retaliation on November 14, 2013. EEOC charge, Record Doc. No. 22-9, Defendant's Exh. H. More than five months later, on April 23, 2014, Dr. Yates advised the Interim Director of the University Police Department that the Administration had decided to separate parking from the police, which required that Knudsen be transferred laterally. Dr. Yates assigned a civilian employee as interim supervisor of parking and transferred Knudsen to a vacant position as a supervisor in the patrol division of the police department, effective May 7, 2014. Letter from Dr. Yates to Carmen Bray, Record Doc. No. 22-10, Defendant's Exh. I; Plaintiff's deposition, Record Doc. No. 22-4, Defendant's Exh. C at p. 247. This is the allegedly retaliatory action of

which Knudsen complains in this matter. Plaintiff's memorandum in opposition to motion for summary judgment, Record Doc. No. 25 at pp. 7, 16, 19.

Defendant's evidence, if believed by the trier of fact, establishes legitimate non-retaliatory reasons for the Board's actions. The burden therefore shifts back to Knudsen to produce competent evidence that demonstrates a material fact issue that the Board's reasons were actually a pretext for retaliation against him because he had engaged in activity protected by Title VII or, stated another way, that retaliation was the "but for" cause of his transfer. Plaintiff has produced- nothing but conclusory statements and subjective beliefs to support his allegations.

There is <u>no evidence</u> that Dr. Yates decided to hire Bell, much less that Bell was chosen, because he was an African-American or for the purpose of retaliating against Knudsen, as plaintiff suggests in his memorandum. Dr. Crain testified that <u>he</u> – not Dr. Yates – decided to have a consultant review the police department as a whole and to hire Bell. Dr. Crain stated that Bell was highly recommended to him by the president of another university that had used Bell's services for a similar review. Dr. Crain neither inquired about nor knew Bell's race until Bell came to campus. Dr. Crain testified without contradiction that Dr. Yates did <u>not</u> recommend Bell to him, but Dr. Yates merely concurred in Dr. Crain's recommendation that a review be conducted and in the choice of Bell after they learned more about his qualifications. Dr. Crain deposition, Record Doc. No. 22-7, Defendant's Exh. F at pp. 86-91. There is <u>no evidence</u> that Dr.

Yates or anyone else retaliated against Knudsen by causing him to be reassigned or that his transfer was for any purpose other than that recommended by Bell's comprehensive report to improve the overall functioning of the police department by separating the essentially civilian function of the parking division from the police department and returning the sergeant's position to law enforcement responsibilities only. Plaintiff's mere subjective belief that Dr. Yates had a retaliatory motive fails to rebut the competent evidence or to establish a disputed issue of material fact as to the retaliation claim. Chambers v. Sears Roebuck & Co., 428 F. App'x 400, 419 n.54 (5th Cir. 2011); Strong v. Univ. Health Care Sys., L.L.C., 482 F.3d 802, 807 (5th Cir. 2007); Roberson v. Alltel Info. Servs., 373 F.3d 647, 654 (5th Cir. 2004). Accordingly, defendant's motion for summary judgment is granted as to plaintiff's retaliation claim.

## CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that defendant's motion for summary judgment is GRANTED IN PART and that plaintiff's retaliation claim is DISMISSED WITH PREJUDICE. The motion is otherwise DENIED. Trial will proceed on May 26, 2015 at 8:30 a.m. as to Knudsen's remaining claim of hostile work

environment racial discrimination, with the final pretrial conference scheduled for May 12, 2015 at 2:00 p.m.

New Orleans, Louisiana, this \_\_\_16th\_\_\_ day of April, 2015.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE